UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAZANIN JAHANI,

        Plaintiff,

   v.

JOHN ARMSTRONG, Acting Assistant
Secretary of State for Consular Affairs, U.S.
Department of State, et al.,

        Defendants.

Civil Action No. 25-2745 (CJN)

**MOTION TO DISMISS AND
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 2

STATUTORY AND REGULATORY BACKGROUND .............................................. 2

LEGAL STANDARDS ................................................................................................. 3

ARGUMENT ............................................................................................................... 4

    I.      Plaintiff Names Officials Who Cannot Provide the Relief Requested. ................. 4

    II.     Plaintiff's Claims Fail Because There is No Discrete Agency Action that a Consular Officer is Required to Take. ................................................................. 5

    III.    Plaintiff's Claims Fail Under the Consular Non-Reviewability Doctrine. ........... 10

    IV.    On the Merits, the Delay Here Is Not Unreasonable. ......................................... 13

        A.     *TRAC* Factors 1 and 2 ........................................................................ 15

        B.     *TRAC* Factor 4 .................................................................................. 17

        C.     *TRAC* Factors 3 and 5 ........................................................................ 18

        D.     *TRAC* Factor 6 .................................................................................. 19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

## Authorities Chiefly Relied Upon

*Baan Rao Thai Rest. v. Pompeo*,
  985 F.3d 1020 (D.C. Cir. 2021)...................................................................10, 11
*Colindres v. Dep't of State*,
  71 F.4th 1018 (D.C. Cir. 2023).............................................................................10
*Dep't of State v. Muñoz*,
  602 U.S. 899 (2024)...........................................................................................1, 10
*Karimova v. Abate*,
  No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024)............................passim
*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004).....................................................................................................5
*Pour v. Rubio*,
  Civ. A. No. 25-573 (JEB), 2025 WL 2374559 (D.D.C. Aug. 14, 2025) ...................9
*Rezvani v. Rubio*,
  Civ. A. No. 24-3381, 2025 WL 1293358 (D.D.C. May 5, 2025)..............................6
*Telecomms. Rsch. & Action Ctr. ("TRAC") v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984).......................................................................1, 13-19

## Cases

*Abdo v. Tillerson*, Civ. A.,
  No. 17-7519, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019) .....................................11
*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011)................................................................................3
*Asadi v. Dep't of State*, Civ. A.,
  No. 23-1953 (RC), 2024 WL 3835409 (D.D.C. Aug. 15, 2024)............................15
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................3, 4
*Baan Rao Thai Rest. v. Pompeo*,
  985 F.3d 1020 (D.C. Cir. 2021).........................................................................10, 11
*Bagherian v. Pompeo*,
  442 F. Supp. 3d 87 (D.D.C. 2020)..........................................................................15
*Belizan v. Hershon*,
  434 F.3d 579 (D.C. Cir. 2006)..................................................................................5
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................3, 4
*Colindres v. Dep't of State*,
  71 F.4th 1018 (D.C. Cir. 2023)...............................................................................10
*Dallas Safari Club v. Bernhardt*,
  518 F. Supp. 3d 535 (D.D.C. 2021) ........................................................................19
*Dastagir v. Blinken*,
  557 F. Supp. 3d 160 (D.D.C. 2021) ..................................................................passim
*Davis v. U.S. Sent'g Comm'n*,
  716 F.3d 660 (D.C. Cir. 2013)..................................................................................6

*Department of State v. Muñoz*,
  602 U.S. 899 (2024) ...................................................................................................1, 10
*Didban v. Pompeo*,
  435 F. Supp. 3d 168 (D.D.C. 2020) ...........................................................................16
*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996) .....................................................................................5
*Gong v. Duke*,
  282 F. Supp. 3d 566 (E.D.N.Y. 2017) ........................................................................17
*Hajizadeh v. Blinken*, Civ. A.,
  No. 23-1766 (LLA), 2024 WL 3638336 n.3 (D.D.C. Aug. 2, 2024)............................6
*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ................................................................................................9, 10
*Hemmat v. Blinken*, Civ. A.,
  No. 23-2085 (TSC), 2024 WL 4210658 (D.D.C. Sept. 17, 2024)...............................7
*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) .....................................................................................3
*Ibrahim v. Spera*, Civ. A.,
  No. 23-3563 (ABJ), 2024 WL 4103702 (D.D.C. Sept. 6, 2024)..................................6
*In re Barr*,
  *Lab'ys*, 930 F.2d 72 (D.C. Cir. 1991) ..................................................................17, 18
*In re Bluewater Network*,
  234 F.3d 1305 (D.C. Cir. 2000) ...........................................................................13, 16
*In re Core Commc'ns, Inc.*,
  531 F.3d 849 (D.C. Cir. 2008) .........................................................................5, 13, 16
*In re Ctr. for Biological Diversity*,
  53 F.4th 665 (D.C. Cir. 2022) ......................................................................................5
*In re Grant*,
  635 F.3d 1227 (D.C. Cir. 2011) ...................................................................................6
*In re Nat'l Nurses United*,
  47 F.4th 746 (D.C. Cir. 2022).......................................................................................5
*In re United Mine Workers of Am. Int'l Union*,
  190 F.3d 545 (D.C. Cir. 1999).....................................................................................14
*Janay v. Blinken*,
  743 F. Supp. 3d 96 (D.D.C. 2024) ..............................................................................11
*Kangarloo v. Pompeo*,
  480 F. Supp. 3d 134 (D.D.C. 2020) ..............................................................................6
*Karimova v. Abate*,
  No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024)............................... passim
*Khaksari v. Chairman, Broad. Bd. of Governors*,
  451 F. App'x 1 (D.C. Cir. 2011)...................................................................................6
*Kolesnikov v. Blinken*, Civ. A.,
  No. No. 23-1675 (TSC), 2024 WL 3638345 (D.D.C. Aug. 2, 2024) .........................13
*Liberty Fund v. Chao*,
  394 F. Supp. 2d 105 (D.D.C. 2005) .......................................................................17, 18
*Liu v. Blinken*,
  544 F. Supp. 3d 1 (D.D.C. 2021) ....................................................................14, 18, 19

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ....................................................................................................3

*Mashpee Wampanoag Tribal Council v. Norton*,
  336 F.3d 1094 (D.C. Cir. 2003) ..........................................................................16, 17

*Milligan v. Pompeo*,
  502 F. Supp. 3d 302 (D.D.C. 2020) ..........................................................15, 18, 19

*Mohammad v. Blinken*,
  548 F. Supp. 3d 159 (D.D.C. 2021) ............................................................... passim

*Montanans for Multiple Use v. Barbouletos*,
  568 F.3d 225 (D.C. Cir. 2009) ....................................................................................5

*Motevali v. Blinken*, Civ. A.,
  No. 23-2133 (RC), 2024 WL 3580937 (D.D.C. July 30, 2024) ............................12

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans*,
  *Affs.*, 842 F. Supp. 2d 127 (D.D.C. 2012) ...........................................................20

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ....................................................................................................5

*Papasan v. Allain*,
  478 U.S. 265 (1986) ....................................................................................................4

*Pour v. Rubio*, Civ A.,
  No. 25-573 (JEB), 2025 WL 2374559 (D.D.C. Aug. 14, 2025) ..............................9

*Rezvani v. Rubio*,
  Civ. A. No. 24-3381, 2025 WL 1293358 n.3 ............................................................6

*Saavedra Bruno v. Albright*,
  197 F.3d 1153 (D.C. Cir. 1999) ..............................................................................10

*Sarlak v. Pompeo*, Civ. A.,
  No. 20-0035 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020)....................15, 16

*Sedaghatdoust v. Blinken*,
  735 F. Supp. 3d 1 (D.D.C. 2024) ........................................................................7, 12

*Shen v. Pompeo*, Civ. A.,
  No. 20-1263 (ABJ), 2021 WL 1246025 (D.D.C. Mar. 24, 2021)........................ 14, 15, 18, 19

*Siddiqui v. Blinken*,
  646 F. Supp. 3d 69 (D.D.C. 2022) ..............................................................................4

*Skalka v. Kelly*,
  246 F. Supp. 3d 147 (D.D.C. 2017) .........................................................15, 16, 19

*Tate v. Pompeo*,
  513 F. Supp. 3d 132 (D.D.C. 2021) ......................................................14, 16, 17, 19

*Telecommunications Research & Action Center ("TRAC") v. Federal Communications*
  Commission,
  750 F.2d 70 (D.C. Cir. 1984) ............................................................................... passim

*Thomas v. Principi*,
  394 F.3d 970 (D.C. Cir. 2005) ....................................................................................3

*United States ex rel. Knauff v. Shaugnessy*,
  338 U.S. 537 (1950) ...........................................................................................10, 11

*Varol v. Radel*,
  420 F. Supp. 3d 1089 (S.D. Cal. 2019) ..............................................................17, 18

*Wan Shih Hsieh v. Kiley*,
  569 F.2d 1179 (2d Cir. 1978) ...................................................................................11
*Wong Wing v. United States*,
  163 U.S. 228 (1896) ...................................................................................................10
*Yaghoubnezhad v. Stufft*,
  734 F. Supp. 3d 87 (D.D.C. 2024) .........................................................................7, 12
*Zakeri v. Blinken*, Civ. A.,
  No. 23-3162 (TJK), 2024 WL 3273418 (D.D.C. July 2, 2024)...............................4

**Statutes**

5 U.S.C. § 555(b) ...............................................................................................................8
5 U.S.C. § 706(1) .............................................................................................................13
8 U.S.C. § 1201(g) ................................................................................................1, 2, 5, 6
8 U.S.C. § 1202(b) .............................................................................................................4
8 U.S.C. § 1361 .................................................................................................................2
28 U.S.C. § 1361 ...............................................................................................................5

**Regulation**

22 C.F.R. § 42.81(a)..........................................................................................................2

By and through their undersigned counsel, Defendants respectfully move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiff claims unreasonable delay and seeks to compel the government to act on an application for an immigrant visa (the "Visa Application"), which has already been refused by a consular officer in a foreign country.  Plaintiff's claims clearly lack merit under the D.C. Circuit views expressed in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), and the Supreme Court's recent ruling in *Department of State v. Muñoz*, 602 U.S. 899 (2024). These authorities make it unnecessary for the Court to apply the factors set forth in *Telecommunications Research & Action Center* ("*TRAC*") *v. Federal Communications Commission*, 750 F.2d 70, 79 (D.C. Cir. 1984), to dispose of this case—though doing so would also result in dismissal of this suit, as explained below.  Instead, the D.C. Circuit in *Karimova* made clear that after a consular officer refuses a visa application under Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), there is no further statutory or regulatory command to act, precluding mandamus relief under the Mandamus Act or the Administrative Procedure Act ("APA").  Additionally, the *Karimova* court made clear that an INA Section 221(g) refusal is a "final" refusal on the merits of a visa application, and thus, under *Muñoz* the consular nonreviewability doctrine also bars this suit.

While Plaintiff may be frustrated with the United States immigration system, that system does not afford Plaintiff a right to compel further consular action after a consular officer has considered and refused Plaintiff's visa application.  Congress has not granted that privilege to any noncitizen visa applicant or any U.S.-based sponsor. For these reasons, which are explored in depth below, the Court should dismiss this case.

## FACTUAL BACKGROUND

Through this action, Plaintiff seeks to compel the government to re-adjudicate an application for an immigrant visa.  Compl. ¶¶ 1-2, 20, Prayer for Relief.  Plaintiff alleges that the Visa Application was made during an interview with a consular officer in at U.S. Embassy Stockholm on June 18, 2024, but was placed into "administrative processing" at the end of the interview.  *See id.* ¶¶ 13-15.  Plaintiff alleges that certain post-refusal administrative processes remain ongoing, *id.* ¶¶ 14, 18, claiming her case "has been in 'administrative processing' without a decision" since June 2024.  Plaintiff filed this suit fifteen months later, in September 2025.

## STATUTORY AND REGULATORY BACKGROUND

State Department regulations promulgated under authority of the INA provide as follows for immigrant visas: "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." 22 C.F.R. § 42.81(a).  The INA in turn has certain provisions describing bases for refusing visa applications.  One such provision, INA Section 221(g), 8 U.S.C. § 1201(g), dictates that a consular officer at a foreign post shall refuse a visa application if it appears to the consular officer from statements or papers in the application, or if the consular officer knows or has reason to believe, that the applicant is ineligible to receive a visa.  INA Section 291, 8 U.S.C. § 1361, places the burden on an applicant noncitizen to establish their eligibility for the requested visa to the satisfaction of the consular officer.

Because an INA Section 221(g) refusal is based on the applicant's failure to demonstrate their eligibility for a requested visa, consular officers often afford noncitizens who have been refused under that section additional administrative processes, which may generate evidence or

conclusions that would cause the officer to reconsider the refusal. *See* State Dep't, Administrative Processing Information, https://perma.cc/8KGL-M4K5 (pinned Sept. 20, 2025). Notably, there is no statutory command to engage in additional administrative processes that could assist noncitizens to meet their burden to demonstrate an eligibility for a visa. Instead, the statutory scheme dictates that a consular officer must refuse a visa to a noncitizen who fails to demonstrate their eligibility for it. As noted above, that occurred here with respect to the Visa Application.

## LEGAL STANDARDS

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. A court, however, is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

### I.   Plaintiff Names Officials Who Cannot Provide the Relief Requested.

As an initial matter, Plaintiff names as defendants officials outside the State Department who should be dismissed for a lack of jurisdiction because they have no alleged role in re-adjudicating the Visa Application.

Plaintiff names two Department of Justice officials—the Attorney General and the U.S. Attorney for the District of Columbia—as defendants but does not allege that any Justice Department official currently plays, or has played, any role in adjudicating the visa request at issue in this case. Indeed, there are no factual allegations at all in the Complaint concerning the Department of Justice, and the INA makes clear it is exclusively a consular officer's job to approve or refuse visa applications. *See Twombly*, 550 U.S. at 555 ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alterations in original); 8 U.S.C. § 1202(b), (d) (noting that visa applications "shall be reviewed and adjudicated by a consular officer"); *Zakeri v. Blinken*, Civ. A. No. 23-3162 (TJK), 2024 WL 3273418, at *3 (D.D.C. July 2, 2024) ("the parties have not brought to the Court's attention any similar visa case in which a court has held that a plaintiff had standing to sue the Attorney General"). Plaintiff has thus "failed to allege either causation or redressability with respect to the[se] defendants." *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 75 (D.D.C. 2022) (Nichols, J.) (dismissing visa applicant's claims against defendants from the Departments of Justice and Homeland Security).

## II.    Plaintiff's Claims Fail Because There is No Discrete Agency Action that a Consular Officer is Required to Take.

Plaintiff cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on the Visa Application now that it has been refused under INA Section 221(g), 8 U.S.C. § 1201(g).  This means Plaintiff has failed to state a claim upon which relief can be granted, and the Court should dismiss this suit with prejudice.  *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("dismissal with prejudice is warranted [ ] when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

"District courts can compel agency action only in the 'extraordinary' case when they find the official committed a 'transparent violation of a clear duty to act' and has 'unreasonably delayed the contemplated action.'"  *Karimova*, 2024 WL 3517852, at *1 (citation modified; quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).  Plaintiffs in suits of this type typically bring both a claim under the APA and a mandamus claim under 28 U.S.C. § 1361.  On the latter, "[t]o obtain a writ of mandamus, the petitioner must show, among other things, that the agency has violated 'a crystal-clear legal duty.'"  *Karimova*, 2024 WL 3517852, at *3 (citing *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022), and *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)).  "Similarly, to make out a claim of agency inaction under Section 706 of the APA, the plaintiff must 'identify a legally required, discrete act that the agency has failed to perform.'"  *Karimova*, 2024 WL 3517852, at *3 (citation modified; quoting *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009)).  "Those two paths to compulsory relief share a common threshold: The court may act 'only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.'"  *Karimova*, 2024 WL 3517852, at *2 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis

omitted)).    Indeed, because the claims are functionally identical in this circumstance, *see Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (Nichols, J.), Defendants address them together herein.

In *Karimova*, the Circuit affirmed the dismissal of a post-refusal immigration mandamus suit brought against the State Department.  In so doing, the court ruled that the government has no clear, non-discretionary duty to further process or adjudicate a visa application once it has been refused by a consular officer under INA Section 221(g), 8 U.S.C. § 1201(g).  Accordingly, the court held that there was no basis to compel agency action (including pending post-refusal administrative processes) either under the APA or the Mandamus Act.  This holding of the D.C. Circuit is dispositive of the claims in this case,[1] which seek to compel State Department officials to act further on a visa application refused under INA Section 221(g) and undergoing post-refusal administrative processing.  *Rezvani v. Rubio*, Civ. A. No. 24-3381, 2025 WL 1293358, at *1 (Nichols, J.) (D.D.C. May 5, 2025) (adopting "the persuasive logic of *Karimova*"); *Ibrahim*, 2024 WL 4103702, at *3 ("[T]he Circuit states quite plainly that the consul's refusing to grant an

---

[1]    Although *Karimova* is an unpublished opinion of the D.C. Circuit, under its rules, it still has binding precedential weight.  *Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011) (noting that unpublished prior panel decision of the court "has the force of precedent[;]" citing D.C. Cir. R. 32.1(b)(1)(B) ("All unpublished orders or judgments of this court, including explanatory memoranda (but not including sealed dispositions), entered on or after January 1, 2002, may be cited as precedent.")).  That is, while an unpublished resolution may not bind future D.C. Circuit panels, *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011), such a resolution is binding on this Court because "that decision is precedential[.]"  *Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013); *Ibrahim v. Spera*, Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("This Court is bound to follow this precedent. . . . the Court is unaware of any authority it might have to review or disregard a decision issued by an appellate court."); *but see, e.g.*, *Hajizadeh v. Blinken*, Civ. A. No. 23-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (finding *Karimova* is not controlling and declining to adhere to its holdings).  Ultimately, "[t]he Court need not decide whether *Karimova* is technically binding on it" because, "[a]t minimum, [*Karimova*] offers persuasive authority" that the Court should follow in this case.  *Rezvani v. Rubio*, Civ. A. No. 24-3381, 2025 WL 1293358, at *1 n.3 (Nichols, J.) (D.D.C. May 5, 2025).

application and placing it in administrative processing is a final refusal"); *Hemmat v. Blinken*, Civ. A. No. 23-2085 (TSC), 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("The *Karimova* decision is fatal to Plaintiffs' claim of unreasonable delay. . . . Because refusal concludes the matter presented by a visa application, Section 555(b) does not establish a duty to take the action that Plaintiffs claim has been unreasonably delayed—further adjudicating the refused visa applications.").

The court examined the statutory and regulatory commands applicable to consular visa processing to assess whether the State Department had a clear duty to act on a visa application after a consular officer had refused it. *Karimova*, 2024 WL 3517852, at *1–2, 4. It found none. Specifically, while the court noted that a consular officer had a duty to either "issue" or "refuse" a visa once an application is executed at an in-person interview with a consular officer, *id.* at *1, it noted that once an application is refused, that decision is "final" under the law. *Id.* at *2 ("There is no such thing as an informal refusal or a pending case once a formal application has been made." (quoting State Dep't Foreign Affairs Manual ("FAM") 504.1-3(i))). In short, the court held:

> [Plaintiff's] appeal centers on her claim that the consular officer owed her a duty to make a "final decision" on her visa application. By "final decision," she means that the consular officer was required to either issue her a visa or refuse her application, without then also placing it in administrative processing. The district court properly dismissed that claim because [plaintiff] has not identified any law plainly prescribing that the consular officer not put an officially refused visa application in administrative processing.

*Karimova*, 2024 WL 3517852, at *3 (citation modified); *see also Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024) (McFadden, J.) ("In refusing Plaintiffs' applications under § 221(g) after their interviews with consular officers, State complied with the regulations governing visa adjudications. It thereby discharged its nondiscretionary duty."); *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024) (McFadden, J.) ("[T]he *only* duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa. And that duty has been

performed; [the noncitizen's] application has been refused.  The statute does *not* create an additional duty to engage in post-refusal reconsideration of the visa application." (citation omitted; emphasis in original)).

The D.C. Circuit also rejected the noncitizen's attempt to find a clear duty to act in the general provisions of the APA itself, in particular APA Section 555(b).  *Karimova*, 2024 WL 3517852, at *3–6.  "That Section is an ancillary provision stating that each agency shall proceed to conclude a matter presented to it with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  *Id.* at *3 (citation modified; quoting 5 U.S.C. § 555(b)).  As such, the court concluded that "[i]ts non-specific directive to all agencies to 'proceed to conclude a matter' within a 'reasonable time' and with 'due regard' to the parties leaves officials ample room for judgment based on the circumstances.  It does not plainly define and place upon consular officers a crystal-clear legal duty after they have adjudicated a visa application to then forgo any potentially beneficial follow-on administrative processing[.]" *Karimova*, 2024 WL 3517852, at *3 (citation modified).

Lastly, the D.C. Circuit noted "particular acute problems" in finding a clear duty to act in APA Section 555(b) in the context of the case, which (as with this action) involved the actions of a consular officer abroad.  In listing these problems, the court explained, in part, that its "starting point is that consular officers have broad discretion when adjudicating visa applications[,]" that plaintiff's "argument hinges on defining what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires[,]" and that plaintiff's "claim is not standard administrative fare"—"[i]t arises within a field that is 'vitally and intricately interwoven with contemporary policies in regard to the conduct of foreign relations and the war power.'"

*Karimova*, 2024 WL 3517852, at *5 (citation modified; quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952)).

Ultimately, the Court concluded that the plaintiff's argument hinged on a demand for action "that neither a federal statute nor regulation clearly requires." *Karimova*, 2024 WL 3517852, at *4 ("Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor[.]").  In closing, the court explained:

> [Plaintiff] sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another "final decision" on her already-refused visa application.  Because [plaintiff] has not identified an adequate legal basis for that duty, the district court properly dismissed her claim.

*Id.* at *6.

The D.C. Circuit's holding in *Karimova* is dispositive of the claims presented in this case.  Accordingly, the Court should dismiss this suit because Defendants have no duty to act further on the visa application at issue in this action.  *See also Pour v. Rubio*, Civ A. No. 25-573 (JEB), 2025 WL 2374559, at *5 (D.D.C. Aug. 14, 2025) ("Regardless of whether *Karimova* is actually binding, it is still a case decided by the Circuit that contains reasoning that the Court finds persuasive as to the APA.  That Act, accordingly, is not the source of a nondiscretionary duty."); *id.* at *5-8 (concluding the same for the INA, State Department regulations, and the Foreign Affairs Manual— i.e., none contain a clear non-discretionary duty to further act on a visa refused under INA § 221(g)).[2]

---

[2]    The government acknowledges there is a split among the jurists in this District as to the binding effect of *Karimova* and whether its reasoning is persuasive.  That debate may be resolved soon as the D.C. Circuit is presently considering another mandamus suit seeking to compel the State Department to act after refusing a visa under INA section 221(g) in *Mehneh v. Rubio*, No. 25-5001 (D.C. Cir.).

**III.**   **Plaintiff's Claims Fail Under the Consular Non-Reviewability Doctrine.**

Because Plaintiff is seeking to compel action after a consular officer has refused the requested visa, this suit runs headfirst into the consular non-reviewability doctrine, warranting its dismissal under Rule 12(b)(6).   Most recently, the Supreme Court reaffirmed this doctrine, and its scope, in *Muñoz*, 602 U.S. at 899.   There, the Supreme Court recognized "the longstanding principle 'that the United States can, as a matter of public policy . . . forbid [noncitizens] or classes of [noncitizens] from coming within their borders,' and '[n]o limits can be put by the courts upon' that power."   *Id.* at 1824–25 (quoting *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)). Further, "Congress may delegate to executive officials the discretionary authority to admit noncitizens" which is "immune from judicial inquiry or interference."   *Id.* at 1820 (citing *Harisiades*, 342 U.S. at 588–91).   And upon exercising this authority, the consular officer's decision "'to admit or to exclude [a noncitizen]' 'is final and conclusive.'"   *Id.* (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)).   Rather than explicitly cabin the doctrine of consular nonreviewability, the Supreme Court emphasized that the INA "does not authorize judicial review of a consular officer's denial of a visa" absent express congressional authorization.   *Id.*

The D.C. Circuit has been equally clear, "[c]onsular nonreviewability shields a consular officer's decision to issue *or withhold* a visa from judicial review, at least unless Congress says otherwise."   *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (emphasis added) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); *see also Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) ("Reflecting the limited role of the judiciary, the consular-non-reviewability doctrine shields a consular official's decision to issue or withhold a visa from judicial review, with two narrow exceptions." (citation modified)).   This is because "[d]ecisions regarding the admission and exclusion of noncitizens may implicate

relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Baan Rao*, 985 F.3d at 1024 (citation modified); *see Knauff*, 338 U.S. at 543 ("it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given [noncitizen]"); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (stating it is "settled that the judiciary will not interfere with the visa-issuing process").

Indeed, by confining the exceptions to the doctrine and noting that the doctrine prevents review of decisions to "withhold" visas, the Supreme Court's approach in *Muñoz* and the D.C. Circuit's approach in *Baan Rao* mirrors the widely held view of courts in the Second Circuit that "the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo v. Tillerson*, Civ. A. No. 17-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases; noting limited exception for "cases brought by U.S. citizens raising constitutional, rather than statutory, claims"). As such, under the Supreme Court and D.C. Circuit's recent guidance, Plaintiff's complaint fails to state a claim for relief. *Baan Rao*, 985 F.3d at 1027-29.

While there was some debate before the D.C. Circuit's decision in *Karimova* as to whether the doctrine applied in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate. The disagreement between judges in this District before *Karimova* hinged on whether a refusal under INA Section 221(g) was final or not. *See, e.g.*, *Janay v. Blinken*, 743 F. Supp. 3d 96, 111 (D.D.C. 2024) (Moss, J.) (reasoning the doctrine is limited only to "final" decisions "to admit or exclude" a noncitizen and

does not "extend[ ] beyond that limited universe"). But as noted above, the D.C. Circuit in *Karimova* rejected the notion that an INA Section 221(g) refusal was somehow not "final." *Karimova*, 2024 WL 3517852, at *2–3, 6 ("[Plaintiff] sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application. Because [Plaintiff] has not identified an adequate legal basis for that duty, the district court properly dismissed her claim."). Indeed, as one judge in this District has observed, "[t]he Circuit's recent, unpublished decision in *Karimova* . . . casts doubt on the accuracy of the reasoning in those decisions. In *Karimova*, the court explained that once a consular official refuses a visa application, the visa has been 'officially refused.'" *Motevali v. Blinken*, Civ. A. No. 23-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024).

Accordingly, a straightforward application of the consular nonreviewability doctrine to the "official" refusal of the Visa Application in this case precludes Plaintiff's claims here. A consular officer has decided to withhold issuing a visa. That decision is not reviewable and ends this matter. *See Yaghoubnezhad*, 734 F. Supp. 3d at 104 ("State has already taken definitive action, and Plaintiffs want the Court to order it to engage in discretionary re-adjudication of that action more quickly. But that is, in effect, no different from ordering the State Department to reopen a dispositive adjudication."); *see also Sedaghatdoust*, 735 F. Supp. 3d at 7 ("[U]nder the consular nonreviewability doctrine, the Court cannot inquire into the basis or validity of that decision. Nor can the Court compel any kind of discretionary post-refusal reconsideration. So under the consular nonreviewability doctrine, Plaintiff is out of luck. The Court can give him nothing that he wants." (citations omitted)). Plaintiff cannot "circumvent the doctrine by claiming that he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the

decision[,]" by seeking, for example, "an order requiring Defendants to 'collect information' and 'exercise actual discretion in processing and adjudicating Plaintiffs' new application for a [ ] visa[.]" *Kolesnikov v. Blinken*, Civ. A. No. No. 23-1675 (TSC), 2024 WL 3638345, at *2 (D.D.C. Aug. 2, 2024). As such, the Court should dismiss this suit with prejudice under the consular nonreviewability doctrine.

## IV.    On the Merits, the Delay Here Is Not Unreasonable.

Even were the Court to reach the merits of Plaintiff's allegations, Plaintiff has still failed to state a claim because any delay here is not unreasonable as a matter of law. When a plaintiff seeks a writ of mandamus to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), a court "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79). Courts in this Circuit apply a six-factor test to determine whether agency action has been unreasonably delayed:

(1)    the time agencies take to make decisions must be governed by a rule of reason;

(2)    where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)    delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)    the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)    the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)     the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted).  Applying these factors here makes clear any delay here is not unreasonable.

Indeed, it is commonplace in this District for courts to dismiss suits such as this—which seek to compel State Department action on visa requests delayed due to processing limitations—under the *TRAC* factors.  *See, e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168-69 (D.D.C. 2021) (McFadden, J.) (dismissing immigration mandamus suit under *TRAC*, "[t]he Court does not doubt that the waiting time has impacted [plaintiff] and her family. But 'delays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities.' And [plaintiff] offers no basis for judicial line-cutting those also waiting their turn") (citation omitted); *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021) (McFadden, J.) (same); *Shen v. Pompeo*, Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025, at *7-9 (D.D.C. Mar. 24, 2021) (dismissing immigration mandamus suit under *TRAC*); *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (Kelly, J.) (denying motion for provisional relief in immigration mandamus suit, "Defendants, not this Court, are best positioned to understand . . . the entire backlog of visa applications, the competing demands on involved personnel, and even how (if at all) to account for the impending deadline [for certain visas]. Thus, Defendants, not this Court, know best how to allocate their resources and prioritize the processing of visa applications."); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (Howell, J.) (denying motion for provisional relief in immigration mandamus suit, "defendants face challenges in determining how to best deploy scarce resources. Balancing the relevant factors, 'the government's interests in balancing its own

priorities' and determining how to allocate scarce resources"); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 316-20 (D.D.C. 2020) (Boasberg, J.) (same).

A.    ***TRAC* Factors 1 and 2**

The first and second *TRAC* factors weigh in Defendants' favor. *See Dastagir*, 557 F. Supp. 3d at 165-67; *Mohammad*, 548 F. Supp. 3d at 165-66; *Shen*, 2021 WL 1246025, at *8; *Milligan*, 502 F. Supp. 3d at 318-19. These factors ask whether the length of time for the agency to act is governed by a "rule of reason" as informed by any specific timetable established by Congress. *Id.* There is no statutory or regulatory timeframe within which the State Department or a consular officer must re-adjudicate visa applications. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (Leon, J.) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention"). Because Congress has established no firm timetable for a consular official to re-adjudicate the visa application at issue, the Court must determine whether the application has been pending for an unreasonable amount of time as established by case law. *See Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine whether a delay is reasonable.).

Here, the case law fails to support Plaintiff's claim of unreasonable delay. Indeed, courts in this District and elsewhere have routinely concluded that delays for immigration benefits far longer than the delay here do not constitute unreasonable delay. *See Asadi v. Dep't of State*, Civ. A. No. 23-1953 (RC), 2024 WL 3835409, at *7 (D.D.C. Aug. 15, 2024) ("courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable"); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (Bates, J.) (finding that "the roughly twenty-five-

month delay to this point in adjudicating [plaintiff's] waiver eligibility is not unreasonable"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (Cooper, J.) (holding that the plaintiffs had "failed to establish that the two-year delay in processing [a] waiver application is unreasonable"); *Skalka*, 246 F. Supp. 3d at 153-54 (citing case law that even a five- to ten-year delay in the immigration context may be reasonable). Using this "case law as a guide," these initial *TRAC* factors weigh in Defendants' favor. *See Sarlak*, 2020 WL 3082018, at *6.

Moreover, a review of the factual circumstances surrounding the consular officer's handling of the visa application confirms that there has been no "transparent violation[ ] of a clear duty to act[,] *Bluewater Network*, 234 F.3d at 1315, or delay "so egregious as to warrant mandamus[,]" *Core Commc'ns, Inc.*, 531 F.3d at 855. Indeed, "[w]hether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Tate*, 513 F. Supp. 3d at 148 (quoting *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

As such, the first two *TRAC* factors weighed in the State Department's favor. *Dastagir*, 557 F. Supp. 3d at 165-67 (finding first two *TRAC* factors favored the agency in suit seeking to compel the re-adjudication of a refused visa application pending at post); *Mohammad*, 548 F. Supp. 3d at 166 (reaching same holding, rejecting plaintiff's attempt to point to USCIS aspirational processing time estimate, noting plaintiff "cannot make apple juice with oranges. The State Department, not USCIS, will handle the visa application. So its processing estimates are not the appropriate yardstick with which to measure the work of the State Department, a separate agency.").

**B.**    *TRAC* **Factor 4**

The fourth *TRAC* factor—the effect of granting relief on the agency's competing priorities—carries significant weight, *see Mashpee Wampanoag*, 336 F.3d at 1100, and weighs heavily in Defendants' favor as Plaintiff asks this Court to move the application here ahead of other pending applications, *see* Compl., Prayer for Relief.  Indeed, "[r]elief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." *Tate*, 513 F. Supp. 3d at 149-50 (collecting citations).

Under this Circuit's precedent, a court will not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others.  *See Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (Bates, J.) (courts will not compel agency action where result "would mean putting [plaintiff] at the head of the queue at the expense of others"); *Mashpee Wampanoag*, 336 F.3d at 1101 ("We agree with the Secretary that the district court erred by disregarding the importance of there being 'competing priorities' for limited resources.  The district court offered no legal justification for precluding the Secretary from relying upon her 'first-come' procedure, and we can conjure none."); *In re Barr Lab'ys*, 930 F.2d 72 (D.C. Cir. 1991) ("The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."); Mandamus relief is inappropriate in this context.  *See Liberty Fund*, 394 F. Supp. 2d at 117; *see also Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098

- 17 -

(S.D. Cal. 2019) ("[G]ranting relief to the Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief.").

To be sure, Plaintiff may argue that this case presents the re-adjudication of only one application, which would not fundamentally recalibrate the Department's processing priorities if the Court were to grant Plaintiff's requested relief. But the Court should not struggle to cast this argument aside. This *TRAC* factor nonetheless favors the government because "[w]hile the effect of an individual case would be minimal, the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, F. Supp. 3d at 150. Thus, "[t]his factor heavily favors defendants' position." *Id.*; *see also Dastagir*, 557 F. Supp. 3d at 167-68; *Mohammad*, 548 F. Supp. 3d at 167-68; *Liu*, 544 F. Supp. 3d at 13-14; *Shen*, 2021 WL 1246025, at *9; *Milligan*, 502 F. Supp. 3d at 319.

## C.     *TRAC* Factors 3 and 5

"The third and fifth [*TRAC*] factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund*, 394 F. Supp. 2d at 118. These factors also weigh in Defendants' favor. Here, Defendants understand that Plaintiff claims that the processing delay has profoundly impacted the lives of Plaintiff and her research. *See generally* Compl. While that may be so, advancing the application would simply benefit Plaintiff to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay. Indeed, expediting review in this case over the applications of other noncitizens would direct resources away from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the State Department's prioritization decisions and place Plaintiff at the front of the line. *See Barr Lab'ys*, 930 F.2d at 75-76 (observing that "a judicial order putting [the petitioner] at the head of the queue [would]

simply move[ ] all others back one space and produce[ ] no net gain[,]" and that agencies are in the best position to allocate their own resources); *Skalka*, 246 F. Supp. 3d at 154 (noting that courts step outside of their "limited role" where they require "agencies to invest the high degree of resources that would be necessary to accurately investigate plaintiffs' visa petitions," because such a requirement "would presumably delay other adjudications" and make others "suffer in response").

### D.    *TRAC* Factor 6

The sixth and final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80.  In the Complaint, Plaintiff does not allege bad faith on the part of the State Department, but does imply the Department should act more promptly to conclude its "administrative processing."  *See* Compl. ¶¶ 2, 14, 17-18.  While delays may be frustrating, they are not proof of impropriety or bad faith.  Instead, they are consistent with limitations on work caused by the plethora of applications seeking visas to come to this country.  *See Tate*, 513 F. Supp. 3d at 150 ("the good faith of the agency in addressing the delay weighs against relief" (quotation marks omitted)); *see also Dastagir*, 557 F. Supp. 3d at 168; *Mohammad*, 548 F. Supp. 3d at 169; *Liu*, 544 F. Supp. 3d at 14; *Shen*, 2021 WL 1246025, at \*9; *Milligan*, 502 F. Supp. 3d at 319-20.  This Court should similarly conclude that this factor weighs in Defendants' favor.[3]

---

[3]    Lastly, although Plaintiff brings APA claims, the basis for Plaintiff's challenge is not final agency action, but rather agency inaction. Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply. *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*" (emphasis added)); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539–40 (D.D.C. 2021) (Mehta, J.) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment). Moreover, the production of an administrative record at this stage is

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action with prejudice.  A proposed order is enclosed herewith.

Dated: November 26, 2025
       Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:           */s/ Andrew J. Vaden*
      Andrew J. Vaden
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2437

      *Attorneys for the United States of America*

---

unnecessary—the United States seeks to dismiss this case not based on an administrative record, but instead based on the facts alleged in the complaint and the present status of the visa application. *See generally Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review.") (citing *TRAC*, 750 F.2d at 79).